IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DEAN A. ROBINSON, as the Executor of the Estate of Dennis R. Robinson, deceased<br><br>Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY, f/k/a Burlington Northern and Santa Fe Railway Company,<br><br>Defendant. | 4:20-CV-3142<br><br>MEMORANDUM AND ORDER |

Dean Robinson, as executor of the estate of his deceased father, Dennis Robinson, is suing Dennis' former employer, BNSF, pursuant to the Federal Employers Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, alleging that Dennis' workplace exposure to toxic substances caused his tongue cancer (which later apparently spread and caused his death). *See* filing 1. BNSF has moved for summary judgment (filing 17) arguing that the claim is time-barred by FELA's 3-year statute of limitations. *See* § 56. The Court will grant BNSF's motion.

BACKGROUND

Dennis was employed by BNSF from 1971 to 1995 as a machine operator and sometimes a laborer. Filing 19-2 at 1. He went on permanent disability in 1995 for a condition unrelated to his employment. Filing 24 at 9.

In a vocational report Dennis completed pursuant to the Railroad Retirement Act in January 1996, shortly after going on disability, he was asked about the environmental hazards he had been exposed to during his employment. Filing 19-2 at 2-3. He indicated that he had been exposed to

heights, dangerous machinery, extreme temperatures, fumes or noxious gases, dust, and excessive noise or vibration. Filing 19-2 at 2-3. He specifically indicated that the "fumes or noxious gases" included "diesel smoke" and sulfur, and that the dust was ballast dust. Filing 19-2 at 3. He wrote that he had been exposed to those hazards "every day while operating machine," "getting in big trucks," and "getting in railroad cars." Filing 19-2 at 2-3.

Dennis also apparently kept notebooks in which he wrote down thoughts that occurred to him (although it was not a journal—just notes, perhaps for his own later reference). *See* filing 24 at 10. After Dennis' death, the plaintiff found several such spiral-bound notebooks, which the plaintiff believed had been written during the early '90s when Dennis was still working for the railroad. Filing 24 at 10-11. The notebooks were thrown away in 2017, well before the plaintiff filed suit, so the only evidence of what they contained is what the plaintiff remembered having read. *See* filing 24 at 10.

But to the best of the plaintiff's recollection, Dennis had written about asbestos, although the plaintiff didn't know why. Filing 24 at 11. The plaintiff did believe, however, that Dennis "had a fear that he was exposed to it in some way" because he "knew that asbestos can be harmful." Filing 24 at 11. The plaintiff said that Dennis had also written about creosote—for instance, asking questions such as "What is creosote?" and "Where does it come from?"—and the plaintiff had the impression that Dennis had been scared of creosote as well. Filing 24 at 11.

In September 2012, Dennis was referred to Dr. Matthew Brown for diagnosis of a suspicious lesion under his tongue. Filing 19-3 at 1. A biopsy was performed, which found an invasive squamous cell carcinoma. Filing 19-3 at 2; filing 19-4. But Dennis (who suffered from depression) did not follow up for about a year and when he did, in September 2013, the tumor had increased in

- 2 -

size and surgery was no longer a viable option. Filing 19-5; filing 19-6; filing 24 at 18, 20. Dennis' condition progressed and went "downhill from, essentially, 2012 to 2017." Filing 24 at 23. He died on November 30, 2017. Filing 24 at 10.

So far as the plaintiff was aware, none of Dennis' health care providers ever offered Dennis an opinion on the cause of his cancer, nor did the plaintiff know whether Dennis investigated that subject. Filing 24 at 23-24. Instead, at some point after Dennis death, the plaintiff's aunt or sister saw a television commercial or read something, "and some way got made aware of a potential lawsuit against the railroad." Filing 24 at 24. The plaintiff filed this lawsuit on November 24, 2020. Filing 1.

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must

- 3 -

cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042. [1]

## DISCUSSION

The only issue presented is whether the plaintiff's claim for relief is barred by § 56, which provides that "[n]o action shall be maintained under [FELA] unless commenced within three years from the day the cause of action accrued." But that statute incorporates a discovery rule: when an injury is not

---

[1] There is a split of authority regarding the burden of proof in a FELA case when a defendant moves for summary judgment based on the statute of limitations. *Compare Fonseca v. Consol. Rail Corp.*, 246 F.3d 585, 590-91 (6th Cir. 2001) (defendant has burden of proof on all affirmative defenses such as statute of limitations); *with Johnson v. Norfolk & W. Ry. Co.*, 985 F.2d 553 (4th Cir. 1993), *and Bealer v. Missouri Pac. R. Co.*, 951 F.2d 38, 39 (5th Cir. 1991) (because timeliness is essential element of plaintiff's claim, plaintiff bears burden of showing genuine factual dispute). For purposes of this motion, however, the Court assigns that burden to BNSF, because the discovery rule in FELA cases is a doctrine of accrual, not a tolling doctrine asserted in response to a statute of limitations defense. *See Pharmacia Corp. Supplemental Pension Plan v. Weldon*, 126 F. Supp. 3d 1061, 1074-75 (E.D. Mo. 2015); *cf. Schmidt v. United States*, 933 F.2d 639, 640 (8th Cir. 1991). Nonetheless, the issue of whether a suit is time-barred is a question of law, which properly may be resolved at the summary judgment stage if there are no genuine issues of material fact in dispute. *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 835 (8th Cir. 2003); *Hallgren v. U.S. Dep't of Energy*, 331 F.3d 588, 589 (8th Cir. 2003).

a single traumatic one with immediate symptoms, but rather a latent one with symptoms appearing over time, the cause of action does not accrue until the employee is aware or should be aware of his condition. *White v. Union Pac. R.R.*, 867 F.3d 997, 1001 (8th Cir. 2017). And in addition to knowing of his condition, the employee must know—or have reason to know—the condition's cause. *Id.* Both components require an objective inquiry into when the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential facts of injury and cause. *Id.* (citing *Fries v. Chi. & Nw. Transp. Co.*, 909 F.2d 1092, 1095 (7th Cir. 1990)).

And this Court has held on more than one occasion that simply becoming aware of a potential financial recovery based on a legal claim is not the sort of "discovery" to which FELA's discovery rule applies. *Smith v. BNSF Ry. Co.*, No. 4:17-cv-3062, 2018 WL 6529503, at *3 (D. Neb. Oct. 16, 2018); *see Salstrand v. BNSF Ry. Co.*, No. 4:20-cv-3146 (D. Neb. Apr. 5, 2022); *McLaughlin v. BNSF Ry. Co.*, 4:18-cv-3047, 2019 WL 4855147, at *3 (D. Neb. Oct. 1, 2019). If the *facts* pertinent to establishing causation included the simple *idea* of causation, the statute of limitations would be effectively meaningless. Rather, the *facts* which, when discovered, cause a FELA claim to accrue must be the facts relating to the injury and the workplace hazards that allegedly produced that injury. After all, "the key [to accrual] is knowledge of the injury and, by extension, knowledge of the cause of that injury; it does not matter whether the plaintiff realizes that a *legal* wrong has occurred." *Tolston v. Nat'l R.R. Passenger Corp.*, 102 F.3d 863, 865 (7th Cir. 1996); *see Fries*, 909 F.2d at 1095.

And in this case, all of the evidence in the record suggests that Dennis was in possession of the facts on which his case relies, even now, no later than his initial diagnosis on September 12, 2012. *See* filing 19-4. The complaint

- 5 -

alleges cancer caused by "diesel fuel/fumes/exhaust, benzene and asbestos dust and fibers." Filing 1 at 2. Specifically, all evidence in the record suggests that Dennis was aware of the hazards to which he had been exposed no later than 1996, and was aware of his medical condition in 2012.

The plaintiff disputes the extent to which Dennis' notes—or, more precisely, the plaintiff's own impression of those notes—illuminate what Dennis knew or didn't know about his workplace exposures. Filing 23 at 4-5, 16-17. To be fair, the probative value of that evidence is fairly weak—but it is also uncontradicted, and the plaintiff has offered no alternative theory for why Dennis would have been jotting down notes about asbestos while he was working for a railroad that, the plaintiff now alleges, exposed him to asbestos.

Similarly, the Court finds little merit to the plaintiff's critique of the vocational report Dennis completed in 1996 which, according to the plaintiff, "only shows that Decedent was aware he was subject to various environmental hazards while on the job." Filing 23 at 17. That is exactly what it shows…but that's actually very important. The plaintiff argues that "mere knowledge of environmental hazards does not equate to knowledge of the potential carcinogenic properties of those hazards." Filing 23 at 17. Fair enough. (Although cancer is probably the risk that comes first to most people's minds when discussing hazardous chemicals and materials—particularly asbestos.) But knowledge of environmental hazards does equate to *knowledge of environmental hazards*—and when a risk commonly associated with such hazards later comes to pass, an employee may "know or have reason to know of a potential cause." *Fries,* 909 F.2d at 1095. The plaintiff's argument essentially amounts to insisting that only *actual* notice of causation will suffice—and that's simply not the law. *See White,* 867 F.3d at 1002-03.

- 6 -

Rather, the plaintiff's arguments about the sufficiency of the evidence really serve to illustrate why statutes of limitations exist in the first place. The parties are fighting about how to interpret the plaintiff's recollection of his deceased father's notes, several years after his father passed away, several years after those notes were destroyed, and not quite thirty years after the notes were written. "Statutes of limitations promote justice by preventing surprises through plaintiffs' revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014). Lost evidence, faded memories, and a (sadly) unavailable witness are *exactly* what we're facing here. The discovery rule exists to insure fairness to plaintiffs who had no notice of their potential claim within the statute of limitations. *See*, *e.g.*, *Stoleson v. United States*, 629 F.2d 1265, 1271 (7th Cir. 1980). But in this case, all of the facts relevant to the claim were known to Dennis several years before the suit was filed. *See White*, 867 F.3d at 1002-03; *Sweatt v. Union Pac. R.R.*, 796 F.3d 701, 708 (7th Cir. 2015).

Dennis knew about his cancer, and knew about the chemicals and hazards to which he'd been exposed over the years, no later than September 12, 2012. Nothing in the record suggests that any new *facts* have been gathered since then—so, there's no basis to find that the plaintiff's claim accrued under a "discovery rule" any time after that date, because he didn't discover anything new before filing suit. A FELA claim accrues "when one reasonably should know that his symptoms are fairly attributable to a workplace injury." *White*, 867 F.3d at 1003. And the bottom line is that the plaintiff didn't know anything when he filed suit that Dennis didn't know the day his cancer was diagnosed. If this claim is fairly attributable to a workplace injury today, it was no less so

on September 12, 2012. Because it accrued no later than then, and no suit was filed within 3 years, the claim is time-barred.

IT IS ORDERED:

1. BNSF's motion for summary judgment (filing 17) is granted.

2. The plaintiff's complaint is dismissed.

3. A separate judgment will be entered.

Dated this 8th day of April, 2022.

BY THE COURT:

John M. Gerrard
United States District Judge